## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL CIAVARRA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0413 |
| | § | |
| BMC SOFTWARE, INC., *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This retaliatory discharge case is before the Court on the Amended Motion for Summary Judgment [Doc. # 31], the Motion to Exclude the Testimony of Michael B. Easley and Larry McCrary ("Motion to Exclude") [Doc. # 33], and the Motion for Leave to Amend Answer ("Motion to Amend") [Doc. # 42], all filed by Defendants BMC Software, Inc. and BMC Software Distribution, Inc. (collectively, "BMC" unless otherwise noted).[1]  Having reviewed the full record in this case and the relevant legal authorities, the Court **denies** each motion.

---

[1]    Plaintiff Michael Ciavarra filed a Response [Doc. # 37] to the Motion for Summary Judgment, Defendants filed a Reply [Doc. # 38], and Plaintiff filed a Sur-Reply [Doc. # 40]. Plaintiff filed a Response [Doc. # 39] to the Motion to Exclude, and Defendants filed a Reply [Doc. # 41].  Plaintiff filed a Response [Doc. # 44] to the Motion to Amend, and Defendants filed a Reply [Doc. # 45].

## I.   FACTUAL AND PROCEDURAL BACKGROUND

There are few facts in this case that are undisputed.  Ciavarra was an account representative for BMC for almost 18 years, most of which were spent servicing the Verizon Services Group ("Verizon") account.  During contract negotiations between BMC and Verizon in 2005, BMC sent Verizon a $67 million "reversion" invoice on December 30, 2005.  The $67 million invoice was a factor used to calculate a February 2006 bonus paid to Steve Rowland, Ciavarra's supervisor.  In late January and early February 2006, Ciavarra reported to superiors at BMC and to Ernst & Young (BMC's outside auditor) that the $67 million was not properly recognizable because it was not collectible.  Shortly thereafter, BMC decided not to recognize the $67 million billed to Verizon in the reversion invoice.

On March 9, 2006, Ciavarra completed a training program presentation for which he was given the lowest score in his department.  In April 2006, Ciavarra's employment with BMC was terminated during a reduction in force.

On July 12, 2006, Ciavarra, through his attorney, filed a complaint with the United States Department of Labor ("DOL") claiming that he had been terminated in violation of the anti-retaliation provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A.  On January 31, 2007, after the complaint with the DOL had been pending

for more than 180 days, Ciavarra filed his lawsuit in this Court alleging a violation of § 1514A.[2]

After an adequate time for discovery, Defendants filed their Motion for Summary Judgment and Motion to Exclude.  Defendants later filed their Motion to Amend.  The motions have been fully briefed and are now ripe for decision.

## II.   MOTION TO AMEND

Defendants seek leave to amend their answer to raise two new affirmative defenses.  Defendants want to assert that Plaintiff failed to exhaust his administrative remedies in connection with his allegation that BMC planned to recognize the $67 million invoice in the fourth quarter of the fiscal year (as opposed to the allegation that BMC planned to recognize the invoice in the third quarter).  Defendants also want

---

[2]   18 U.S.C. § 1514A(a) provides:

> Whistleblower protection for employees of publicly traded companies.- No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d)), or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee-
>
> (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . ..

to assert that Plaintiff had unclean hands based on the statement in Plaintiff's Response to the Motion for Summary Judgment that he could "no longer" go along with the plan to recognize revenue from the invoice.

The deadline for amendments to pleadings was September 10, 2007.  *See* Docket Control Order [Doc. # 10] (deadline for amended answers was twenty days after the August 20, 2007 deadline for amended pleadings by Plaintiff).  "Federal Rule of Civil Procedure 16(b) governs amendment of pleadings once a scheduling order has been issued by the district court."  *Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S & W Enters., LLC v. Southtrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir. 2003)).  Under Rule 16(b), amendments after the deadline in the scheduling order require leave of court upon a showing of good cause.  *See* FED. R. CIV. P. 16(b).  The good cause standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."  *Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S & W Enters., LLC v. Southtrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir. 2003)).  When considering whether good cause has been shown, the Court considers the following factors: "(1) the explanation for the failure to timely move for leave to amend;  (2) the importance of the amendment;  (3)

potential prejudice in allowing the amendment;  and (4) the availability of a continuance to cure such prejudice.'" *Id.*

Defendants claim that they were unaware of the need to amend their answer until Plaintiff filed his Response to the Motion for Summary Judgment.  With reference to the exhaustion defense, Plaintiff testified in his deposition on August 6, 2007, that he did not know whether Defendants planned on recognizing the revenue "in the third fiscal quarter or the fourth fiscal quarter or any time beyond that as to when they were going to recognize the revenue . . .." *See* Ciavarra Deposition, Exh. 2 to Response to Motion to Amend, p. 258.  With reference to the unclean hands defense, Plaintiff also testified during his August 6, 2007 deposition that he "couldn't go along with this any longer, that it was – that it was not being honest." *See id.* at 229.  At that time, there remained more than a month before Defendants' amendment deadline.  Defendants offer no explanation for their failure to amend within that month.

The amendments are not particularly important to Defendants.  First, there is no requirement that a party exhaust each factual allegation in the complaint.  Here, Plaintiff clearly exhausted his claim that his employment was terminated in retaliation for having brought the recognition issue to the attention of his boss's superiors and of the outside auditors.  Regarding the unclean hands defense, Defendants cite no legal

authority for their statement that a person who had any involvement in a potential Sarbanes-Oxley violation is barred from pursuing a retaliatory discharge claim if he later reports the alleged violation and, as a result, is discharged.

The Court finds that substantial prejudice will result from allowing the proposed amendments. Discovery in the case is complete, dispositive motions have been filed and fully briefed, and the case is scheduled for docket call in March 2008. If the amendment is permitted, discovery will need to be reopened, Defendants will likely file another dispositive motion that will need to be briefed by the parties and decided by the Court, and the docket call will need to be postponed.

An extension of the deadlines in this case would cure some of the prejudice described above, but would not cure the substantial expense involved in additional discovery and motion briefing. The Court exercises its discretion to preserve the integrity and purpose of its Docket Control Order particularly where, as here, Defendants could and should have amended prior to the original deadline for amendments.

Defendants have failed to show good cause for their failure to amend their answer prior to the deadline established in the Court's Docket Control Order. As a result, the Motion to Amend is denied.

### III.   MOTION FOR SUMMARY JUDGMENT

#### A.   Standard for Summary Judgment

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *de la O v. Housing Auth.*, 417 F.3d 495, 501 (5th Cir. 2005). If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. Rule 56(e). *Id.* The court construes all facts and considers all evidence in the light most favorable to the nonmoving party. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 416 (5th Cir. 2006).

#### B.   "Covered Employee" Status

Defendants argue that Plaintiff was an employee of BMC Software Distribution, Inc., a subsidiary company that is not publicly traded. As a result,

Defendants argue, Plaintiff is not a "covered employee" for purposes of a § 1514A claim.

As an initial matter, the Court notes that Plaintiff has alleged that he was an employee of BMC Software, Inc., a publicly traded company, and has presented evidence that raises a genuine issue of material fact on that issue. Specifically, Plaintiff has presented evidence that he was presented with a proposed Separation Agreement, prepared by or at the direction of BMC Software, Inc. *See* Personalized Employee Information Sheet and Separation Agreement, Exh. 25 to Response to Motion for Summary Judgment. The proposed Separation Agreement provides clearly that it is between Ciavarra and BMC Software, Inc. and that Ciavarra has been employed by BMC Software, Inc., the publicly-traded company. *See id.* at 2.

Additionally, an employee of a subsidiary is a covered employee for § 1514A purposes where the officers of the publicly-traded parent company have the authority to affect the employment of the subsidiaries' personnel. *See Carnero v. Boston Scientific Corp.*, 433 F.3d 1, *6 (1st Cir. 2006). Plaintiff has presented evidence that a BMC Software, Inc. officer was the supervisor of Plaintiff's immediate supervisor. There is a fact issue as to whether the BMC Software, Inc. individual had the authority to affect Ciavarra's employment. Defendants argue that the BMC Software, Inc. officer did not exercise any authority in connection with the decision to terminate

Plaintiff's employment, but there is a genuine issue of material fact regarding whether he possessed such authority.

Plaintiff has presented evidence from which a trier of fact could find that he was a covered employee for purposes of his § 1514A claim.


**C.    *Prima Facie* Case**

To establish a *prima facie* case under § 1514A, the plaintiff must show: "(1) he engaged in a protected activity as defined by [Sarbanes-Oxley]; (2) the employer was aware of the protected activity; (3) the employee suffered an adverse employment action; and (4) circumstances are sufficient to raise an inference that the protected activity was likely a contributing factor in the unfavorable action."  *See Mozingo v. South Financial Group, Inc.*, 520 F. Supp. 2d 733, 740 (D.S.C. 2007); *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 711 (E.D. Va. 2007); *Sussberg v. K-Mart Holding Corp.*, 463 F. Supp. 2d 704, 711 (E.D. Mich. 2006).  Defendants argue that Plaintiff has not presented evidence to raise a genuine issue of material fact regarding his having engaged in protected activity and whether any protected activity was a contributing factor in his discharge.

Protected activity for purposes of § 1514A includes providing information regarding any "conduct which the employee reasonably believes constitutes a

violation" of Sarbanes-Oxley, any rule or regulation of the Securities and Exchange Commission ("SEC"), or any provision of Federal law relating to fraud against shareholders. *See* 18 U.S.C. § 1514A. In this case, Plaintiff has presented evidence that he provided information to BMC management and to its outside auditor regarding the anticipated recognition of the $67 million "reversion" invoice to Verizon, and that he reasonably believed that the improper recognition of the amount reflected in the invoice was a violation of Sarbanes-Oxley and other federal laws relating to fraud against shareholders. Defendants challenge Plaintiff's evidence, but there are genuine issues of material fact to be decided by the trier of fact concerning whether Plaintiff had a reasonable belief that Defendants' conduct constituted a violation of Sarbanes-Oxley or other applicable federal laws.

On the causal connection issue, Plaintiff has presented evidence that he provided information regarding the $67 million recognition issue around the end of January 2006. In March 2006, Plaintiff – an 18-year employee – was given a very negative evaluation during a training program. In April 2006, Plaintiff's employment was terminated. The relatively close temporal proximity between the protected activity and Plaintiff's discharge raises an inference of causation sufficient to avoid summary judgment. *See, e.g., Collins v. Beazer Homes USA, Inc.*, 334 F. Supp. 2d

1365, 1375-76 (N.D. Ga. 2004) (§ 1514A claim); *see also Lemaire v. Louisiana Dept. of Transp.*, 480 F.3d 383, 390 (5th Cir. 2007) (Title VII retaliation claim).

Plaintiff has presented evidence to raise a genuine issue of material fact in support of his § 1514A retaliation claim and, as a result, summary judgment on this basis is inappropriate.

### D.    Defendants' Reduction in Force Defense

Defendants argue that Plaintiff's employment was terminated as part of a reduction in force and that he would have been included in the reduction even if he had not disclosed the recognition issue.  Defendants must establish this defense by clear and convincing evidence.  *See Collins*, 335 F. Supp. 2d at 1380.

Defendants assert that Plaintiff was selected for termination during a reduction in force based on his poor performance.  Defendants state that Plaintiff did not have a strong relationship with Verizon management, scored poorly on a training program, and was a below average performer.

Plaintiff has presented evidence that he was one of BMC's most successful salespeople in the company's history, that he was often named to BMC's "President's Club" as one of the best performers, and that in his final performance review before his discharge his overall performance was rated as "Excellent."  Plaintiff has presented

evidence that his partner on the Verizon account recognized Plaintiff as one of BMC's top salespeople.  Verizon employees have testified in deposition that Ciavarra was one of the best salespeople, that he was "responsive" and "receptive" to Verizon's needs, and that he played an important role in Verizon's decision to maintain a relationship with BMC for such a long period of time.

Plaintiff has presented evidence that raises a genuine issue of material fact regarding whether Defendants would have selected him for the reduction in force if he had not engaged in protected activity under Sarbanes-Oxley.  Defendants' Motion for Summary Judgment on this basis is denied.

## IV.  **MOTION TO EXCLUDE**

### A.  **Applicable Legal Standard**

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  FED. R. EVID. 702.  The district court is required to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid [reliability] and of whether that reasoning or methodology can be applied to the facts at issue [relevance]."  *Skidmore*

*v. Precision Printing And Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (citing

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993)).[3] This

so-called "gate-keeping" obligation applies to all types of expert testimony, not just

"scientific" testimony. *Id.* at 617-618 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S.

137, 147 (1999)). The district court's responsibility "is to make certain that an expert,

whether basing testimony upon professional studies or personal experience, employs

in the courtroom the same level of intellectual rigor that characterizes the practice of

an expert in the relevant field." *Kumho*, 526 U.S. at 151. The Court "must ensure the

expert uses reliable methods to reach his opinions; and those opinions must be

relevant to the facts of the case." *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325

(5th Cir. 2004).

**B.    Analysis**

Michael B. Easley is Plaintiff's damages expert. In connection with his analysis

of Plaintiff's future lost wages, Easley made several assumptions. He assumed that

Plaintiff would find replacement employment by January 2008, and he also assumed

---

[3]    This case will be tried to the Court without a jury. "Most of the safeguards provided for in
*Daubert* are not as essential in a case such as this where a district judge sits as the trier of
fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). This is true
because the Supreme Court's principal concern in *Daubert* was to prevent jury exposure to
confusing and unreliable expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509
U.S. 579, 595-97 (1993).

that the replacement employment would be with a smaller company that paid lower commissions. Defendants challenge these two assumptions.

Easley also reviewed and considered information from Salary.com, an online salary survey. Defendants challenge Easley's use of the Salary.com information because he had only limited knowledge about the basis for the online information.

Larry McCrary is Plaintiff's liability expert. Defendants challenge McCrary's opinion that the $67 million invoice was material to BMC's finances because SEC Staff Accounting Bulletin No. 99 provides that materiality involves the impact of reported misrepresentations or unreported omissions. Plaintiff's position in this case is that BMC intended to misrepresent in its accounting reports and public filings that the $67 million was collectible and recognizable and that, because of Plaintiff's providing information on the planned misrepresentation, the report was altered before it became final. Because Plaintiff's claim is that he was retaliated against for providing information that ultimately affected Defendants' filings so that they did not include the misrepresentations, SEC Staff Accounting Bulletin No. 99 does not render Plaintiff's expert's opinions inadmissible in this case.

Defendants also complain that McCrary failed to consider certain "uncontroverted" evidence and failed to consider the DOL and SEC investigations. Whether McCrary failed to consider certain evidence and, indeed, whether the

evidence is truly uncontroverted, are issues that can be explored at trial.  It is further noted that the existence of the DOL and SEC investigations will be known to the Court at trial but the Court must evaluate Plaintiff's § 1514A claim on a *de novo* basis.

As the Supreme Court in *Daubert* made clear, this Court's role as gatekeeper is not intended to serve as a replacement for the adversary system:  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *See Primrose Operating Co. v. National American Insurance Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *Daubert*, 509 U.S. at 596).  Because this is a bench trial and because Defendants can challenge Easley's and McCrary's opinions during cross-examination, the Court denies the Motion to Exclude.

## V.    CONCLUSION AND ORDER

Defendants have failed to show good cause to support their Motion to Amend. Genuine issues of material fact preclude summary judgment, and Defendants' challenges to the testimony of Easley and McCrary are more properly the subject of cross-examination than the basis for exclusion of their testimony.  Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 31], Motion to Exclude [Doc. # 33], and Motion to Amend [Doc. # 42] are **DENIED**.

SIGNED at Houston, Texas, this $\underline{7^{th}}$ day of **February, 2008**.

Nancy F. Atlas
United States District Judge